CLERKS OFFICE US DISTRICT COURT
AT ABINGDON, VA
FILED
July 31, 2024
LAURA A. AUSTIN, CLERK
BY: /s/ Robin Bordwine
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| **HUBERT ANTHONY SALYER,** | )<br>) |
| Plaintiff, | )<br>) Case No. 2:22CV00025<br>) |
| v. | ) **OPINION AND ORDER**<br>) |
| **COMMISSIONER FOR SOCIAL SECURITY ADMINISTRATION,** | ) JUDGE JAMES P. JONES<br>)<br>)<br>) |
| Defendant. | ) |

*Hugh F. O'Donnell, Norton, Virginia, for Plaintiff; Brittany J. Gigliotti, Special Assistant United States Attorney,* OFFICE OF THE GENERAL COUNSEL, SOCIAL SECURITY ADMINISTRATION, *Baltimore, Maryland, for Defendant.*

In this Social Security disability insurance case, I will accept the Report and Recommendation (Report) of the magistrate judge.

The plaintiff, Hubert Anthony Salyer, challenges the final decision of the Social Security Commissioner (the Commissioner) denying disability insurance benefits under the Social Security Act. The action was referred to United States Magistrate Judge Pamela Meade Sargent to conduct appropriate proceedings. 28 U.S.C § 636(b)(1)(B); Fed. R. Civ. P. 72(b). Magistrate Judge Sargent filed her Report on March 13, 2024, in which she recommended that the court affirm the Commissioner's decision denying benefits. Report 36, ECF No. 29. On April 25,

2024, Salyer filed a timely Objection to the Report. The Commissioner has filed a Response to the Objection and accordingly the Objection is ripe for decision.

I.

The court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b). When reviewing the decision of an Administrative Law Judge (ALJ) under the Social Security Act, the court must ask whether there is substantial evidence supporting the ALJ's factual findings and whether the ALJ applied the correct legal standard. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (superseded by statute on other grounds as stated in *Stroup v. Apfel*, 205 F.3d 1334 (4th Cir. 2000) (unpublished)). Substantial evidence is evidence that "a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Although "the threshold for such evidentiary sufficiency is not high," *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019), the court may not "reflexively rubber-stamp an ALJ's findings." *Arakas v. Comm'r*, 983 F.3d 83, 95 (4th Cir. 2020) (internal quotation marks and citation omitted). "To pass muster, ALJs must build an accurate and logical bridge from the evidence to their conclusions." *Id.* (internal quotation marks and citations omitted).

II.

Salyer presents a variety of objections to the Report, all of which ultimately fail. The ALJ applied the correct legal standard and supported all of the relevant factual findings with substantial evidence.

Preliminarily, the court notes that Salyer frequently criticizes the ALJ's opinion and the Report for cherry-picking facts in support of their conclusions. Having carefully reviewed the ALJ's opinion and the Report, I conclude that these accusations are meritless.

A.

Salyer's first set of objections involves alleged factual misrepresentations by either the ALJ's opinion or the Report. Salyer criticizes the ALJ for cutting him off mid-sentence during the hearing, supposedly preventing him from testifying about his efforts to obtain financial aid for medical care. Pl.'s Reply to Def.'s Resp. 5–6, ECF No. 34. The transcript shows, however, that the ALJ invited Salyer's non-attorney representative to elicit testimony from Salyer on any relevant subject. Admin. R., Hr'g Tr. 10–11, ECF No. 14-3. Thus, Salyer could have testified about any financial aid options he had explored.

Second, Salyer asserts that the ALJ erroneously stated that the consultative examiner had found that Salyer could frequently sit. The ALJ's opinion, however, is referring to the July 2020 functional capacity evaluation, not the January 2022

3

consultative examination. Notes from the functional capacity evaluation reveal that the examiner did consider Salyer capable of frequently sitting. Admin. R., Med. R. Ex. 19F, at 6, ECF No. 14-9.

Third, Salyer argues that the Report wrongly stated that Salyer and his representative had both expressed uncertainty about whether Salyer's temporary Medicaid could be used to visit a neurosurgeon. Obj. 16–17, ECF No. 32. This contention is meritless. When asked whether he could use temporary Medicaid to visit a neurosurgery provider, Salyer stated, "I'm not for sure." Admin. R., Hr'g Tr. 20, ECF No. 14-3. Salyer's representative also expressed uncertainty on this point. *Id*. at 19–20.

Finally, Salyer claims that the Report erred in stating that the supplemental hearing took place due to an agreement between the ALJ and Salyer's representative to improve the record. Any such error is legally inconsequential and does not warrant remand.

B.

Salyer's next set of objections critiques the ALJ's evidentiary analysis. First, Salyer asserts that the ALJ wrongly held his failure to obtain treatment after August of 2020 against him. According to Salyer, he lacked the financial ability to obtain the recommended treatment and it was reasonable for him to spend his $200,000 workers' compensation settlement on personal debts rather than on treatment.

Additionally, Salyer argues that Dr. Burt's failure to treat him properly explains his reluctance to obtain a third surgery from Dr. Burt.

It is reasonable to suppose that a patient suffering from severe, persistent pain would eagerly pursue whatever treatment options might be available, even if this court might not have come to the same conclusion if reviewing the fact in the first instance. The ALJ had the opportunity to weigh these competing explanations of Salyer's failure to obtain treatment, and substantial evidence supports the ALJ's decision to hold this failure against Salyer.

Second, Salyer criticizes the ALJ for relying on medical records from the summer of 2020 to discount his testimony about his medical condition. He claims to have suffered far greater pain than he had experienced during the summer of 2020 due to a back injury around that time. However, there is evidence in the record cutting against Salyer's testimony. For example, during a July 2020 visit with Dr. Burt, Salyer initially appeared to be unable to walk around the office without holding on to the walls and desk for support. Admin. R., Med. R. Ex. 11F at 2, ECF No. 14-9. But as Salyer was leaving the office, Dr. Burt witnessed him "walk[ing] with great alacrity" in the parking lot and getting into his car without any trouble, suggesting that he had been exaggerating his symptoms. *Id*. This incident could reasonably call Salyer's credibility into question.

5

In addition, according to the ALJ, the records from Salyer's pain management clinic indicate that "he had been doing okay." Admin. R., Hr'g Tr. 11, ECF No. 14-3. Moreover, Dr. Burt's records appear to contradict Salyer's account of his summer 2020 injury. Salyer claims that overexertion during the July 2020 functional capacity evaluation caused him to injure his back. Admin. R., Hr'g Tr. 10, ECF No. 14-3. However, during his August 2020 appointment with Dr. Burt, Salyer denied having recently engaged in any strenuous activity. Admin. R., Med. R. Ex. 14F at 1, ECF No. 14-9. Considering all this evidence, the ALJ could have reasonably questioned whether Salyer in fact experienced greatly increased pain after the summer of 2020. Hence, substantial evidence supports the ALJ's use of the summer 2020 medical records to call Salyer's testimony into question.

Lastly, Salyer faults the ALJ for relying upon the objective medical evidence obtained during the January 2022 consultative examination. The plaintiff argues that the nurse practitioner who administered the exam did not have experience dealing with the types of injuries at issue in this case. But whatever the imperfections of the exam, the nurse practitioner was qualified to administer it. A reasonable mind could therefore conclude that the objective medical evidence from the consultative examination accurately reflected Salyer's medical condition.

## C.

Salyer's final set of objections involves claims of impropriety by the ALJ. First, Salyer accuses the ALJ of behaving inconsistently. Specifically, Salyer argues that at the first hearing, the ALJ appeared uninterested in the amount of Salyer's workers' compensation settlement. At the supplemental hearing, however, the ALJ asked a series of questions about the amount of Salyer's workers' compensation settlement, thereby displaying inconsistency, at least according to the plaintiff. Salyer cites no legal authority in support of the proposition that ALJs violate the law by displaying some inconsistency during hearings.

Relatedly, Salyer argues that the ALJ should not have inquired into the terms of his workers' compensation settlement at all. But it is entirely proper for an ALJ to consider whether a claimant's efforts to obtain treatment align with the claimant's "subjective complaints" since failure to adequately pursue treatment might indicate symptom exaggeration. SSR 16-3p, 2017 WL 5180304, at *9 (Oct. 25, 2017). In determining whether a claimant has adequately pursued treatment, an ALJ may consider that an "individual may not be able to afford treatment." *Id*. at *10. Since Salyer did not obtain the third surgery recommended by Dr. Burt, his financial resources were relevant to the ALJ's inquiry. Therefore, the ALJ acted properly in considering Salyer's workers' compensation settlement.

Finally, Salyer claims that the ALJ failed to properly develop the record. According to Salyer, the ALJ decided during the first hearing to order a consultative examination to remedy the insufficiency of Salyer's medical records. The ALJ later found the consultative examiner's medical opinion unpersuasive because the objective medical evidence obtained during the exam did not support the examiner's medical opinion. Citing *Oakes v. Kijakazi*, 70 F.4th 207 (4th Cir. 2023), for support, Salyer argues that the ALJ had a duty to continue developing the record because the consultative examination failed to remedy the record's insufficiency.

The ALJ had a duty to develop the record fully and fairly, 20 C.F.R § 404.1512(b), and he discharged that duty, notwithstanding *Oakes*. In *Oakes*, the court held that the ALJ should have recontacted the consultative examiner in order to resolve a critical ambiguity within the examiner's report. 70 F.4th at 213. The claimant in *Oakes* only had records from two emergency room visits prior to the exam. *Id.* at 211. Thus, the insufficiency of the record was palpable, and the ALJ needed to resolve the ambiguity within the examiner's report in order to develop a remotely adequate record. *Id.* at 213–14.

By contrast, in this case the ALJ had the benefit of voluminous treatment records. The ALJ did not need to agree with the examiner's medical opinion in order for the objective medical evidence from the exam to complete the record. Therefore, the ALJ properly developed the record in accordance with § 404.1512(b).

## III.

In light of the foregoing, it is **ORDERED** as follows:

1. The plaintiff's Objection, ECF No. 32, is DENIED;

2. The Magistrate Judge's Report and Recommendations, ECF No. 29, is fully ACCEPTED;

3. The plaintiff's Motion for Summary Judgment, ECF No. 22, is DENIED; and

5. A separate final judgment will be entered herewith.

ENTER: July 31, 2024

/s/ JAMES P. JONES
Senior United States District Judge